**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
ALISA S. PATE,                 )
                               )
              Plaintiff,       )
                               )        Civil Action
v.                             )        No. 19-cv-11594-PBS
                               )
ANDREW M. SAUL,                )
                               )
Commissioner of the           )
Social Security Administration,¹ )
                               )
              Defendant.       )
_____)
```

**MEMORANDUM AND ORDER**

June 11, 2020

Saris, D.J.

Plaintiff Alisa Pate brings this action under 42 U.S.C. §§ 405(g) for judicial review of a final decision denying her applications for Supplemental Security Income. She claims that the Administrative Law Judge ("ALJ") erred by basing his conclusions on a lay interpretation of the medical record and by failing to consider vocational expert testimony submitted by the Plaintiff.

---

[1]Andrew M. Saul has been substituted pursuant to Fed. R. Civ. P. 25(d) for Nancy A. Berryhill, the former Acting Commissioner of the Social Security Administration.

For the following reasons, the Court **ALLOWS** Plaintiff's motion for an order remanding the decision of the Commissioner (Dkt. No. 14) and **DENIES** Defendant's motion for an order affirming the Commissioner's decision (Dkt. No. 19).

## FACTUAL BACKGROUND

The following facts are taken from the administrative record. (Dkt. No. 12).

## I.  Medical History

Plaintiff suffered a head injury in or around 1985 at the age of twenty-three when she was thrown from a vehicle. She spent the following year in a rehabilitation facility. Following the accident, her memory declined and she began having seizures.

Physicians at Southcoast Health System's Brain and Spine Center ("Southcoast Brain and Spine") believe Plaintiff's head injury caused her seizures, which were managed with medication. Around September 2012, Plaintiff received a brain MRI scan at Southcoast Brain and Spine which showed posttraumatic brain changes.

From November 2012 to September 2014, Plaintiff was seen by Randy Caplan, DO at Southcoast Physicians Network ("Southcoast Physicians") primarily for anxiety, depression, and seizure disorder. Dr. Caplan prescribed Plaintiff several medications for anxiety and depression.

2

On November 13, 2012, Dr. Caplan described that Plaintiff's depression and anxiety were "under good control with medication." Dkt. No. 12-7 at 71. In 2013, Plaintiff experienced increased anxiety and depression. In April 2013, Dr. Caplan noted she "feels more anxious lately," and she complained of anxiety attacks. Id. at 69. In June 2013, Plaintiff was "[s]till anxious." Id. at 63.

In August 2013, Dr. Caplan assessed Plaintiff for anxiety and depression and noted her symptoms had improved with medication. In November 2013, Dr. Caplan described Plaintiff as experiencing "[c]hronic anxiety and depression," and wrote that with daily use of Paxil, the Plaintiff's "relat[ed] anxiety decreased but mood [was] often depressed." Id. at 53. Her cognitive exam was "grossly normal." Id.

On December 2, 2013, a physician at Southcoast Brain and Spine noted that Plaintiff experienced some increased "fatigue/forgetfulness" but did not report weakness. Id. at 84.

On December 17, 2013, Plaintiff saw Dr. Caplan, who noted Plaintiff was taking Trileptal to prevent seizures was feeling "well transitioning from Paxil to Zoloft for anxiety & depression." Id. at 51. Plaintiff stated she suffered from depression but denied feeling weakness, dizziness, or recent seizures. Dr. Caplan described the Plaintiff's psychiatric state as follows: "Chronic excessive worry for [greater than] 6

3

months. Chronic fear of being unable to cope. Restless. Nervous. Chronic sleep disturbance; controlled with use of medication. Chronically poor concentration ... Less participation in hobbies & social activities (enjoyment) than in the past. Low or depressed mood." Id. Dr. Caplan described the Plaintiff's examination as "gait normal, alert and oriented, cognitive exam grossly normal . . . speech clear," yet Plaintiff also was "anxious appearing, [with] poor concentration" and Plaintiff's recollection was "poor." Id. at 52.

Plaintiff described improved symptoms from January 2014 through the beginning of June 2014. On January 16, 2014, Dr. Caplan determined Plaintiff had an "improved mood and less anxiety on sertraline. Denies side effects. Sleeping better." Id. at 47. Dr. Caplan also noted that Plaintiff "ha[d] res[p]onded nicely" to her treatment for depression. Id. The general examination showed Plaintiff "in no acute distress" and a "good mood." Id.

In March 2014, Dr. Caplan noted "no recent seizures." Id. at 45. On May 19, 2014, Dr. Caplan noted that Plaintiff "[d]enies any seizures." Id. at 43. The physician also noted Plaintiff's depression was "improved," anxiety "improved" and seizure disorder was "currently stable." Id.

at 43-44. On June 11, 2014, Dr. Caplan stated Plaintiff

"currently feels well. Denies complaints." Id. at 39.

On June 30, 2014, Dr. Caplan described "an episode where

[Plaintiff] was driving to the grocery store and she forgot

where she was and how to get there." Id. at 37. Dr. Caplan

reasoned it was "possible she may have had some seizure

activity." Id. She was asked not to drive. Id.

In July 2014, Plaintiff received an EEG to assess seizure-

like activity after the driving incident. The EEG revealed

"normal waking, drowsing, and sleeping," but the test provider

noted that it did "not exclude the clinical diagnosis of

seizures or epilepsy." Id.

On August 16, 2014, Plaintiff was admitted to the hospital

after experiencing "abnormal gait" and "falling over without

provocation." Id. at 33. Plaintiff experienced a "[n]ew onset

unsteady gait [and] weakness." Id. at 7. A CT scan of

Plaintiff's head showed a white matter disease possibly related

to her prior traumatic injury.

On August 18, 2014, Plaintiff received a brain MRI at

Southcoast Health System, and Dr. Gregory Hurlock noted a

history of unsteady gait, dizziness, and frequent falls. Dr.

Hurlock concluded the MRI showed "[n]onspecific white matter

changes, likely represent[ing] sequela of chronic

microangiopathy, similar to" results seen a test performed on Plaintiff in 2012. Id. at 6.

Upon discharge, on August 18, 2014, Dr. Caplan diagnosed Plaintiff with chronic "[g]ait disorder, likely due to alcohol use in the past with Dilantin use as well." Id. at 115.

In September 2014, Plaintiff saw Dr. Caplan for a follow up. Dr. Caplan noted Plaintiff was "in no acute distress," with "good mood." Id. at 33-34.  Her gait abnormality had "resolved" and her seizure disorder was "stable." Id. at 34.

Between 2014 and 2018, Plaintiff's condition devolved, though Plaintiff occasionally reported improved symptoms. In April 2016, Plaintiff's EEG test results were abnormal. In October 2016, a nurse practitioner described Plaintiff as "manic" during a physical exam. Dkt. No. 12-14 at 16. In January 2017, the same nurse practitioner described Plaintiff's mood and behavior as normal. However, in July 2017, Dr. Anna Somerto wrote Plaintiff's memory was "worsening over time" and that "difficulty concentrating." Id. at 27. Plaintiff was advised multiple times to seek treatment for alcohol abuse. In April 2018, Plaintiff denied having anxiety, depression, or memory loss.

In May and September 2018, John Dorn, Psy.D., examined the
Plaintiff to produce a diagnostic testing report. Dr. Dorn
administered the psychological testing, including the Wechsler
Adult Intelligence Scale. Dr. Dorn diagnosed Plaintiff with
major depression, generalized anxiety disorder, history of
traumatic brain injury, mild neurocognitive disorder, seizure
disorder, alcohol use disorder, unspecified dementia, and
unspecified attention deficit hyperactivity disorder.

## II.  Medical Opinions

### A. Dr. Roland Einhorn

On September 22, 2014, Dr. Roland Einhorn completed a
physical residual functional capacity assessment of the
Plaintiff. Dr. Einhorn found that Plaintiff could occasionally
lift or carry 20 pounds, frequently lift 10 pounds, stand or
walk for a total of four hours, and sit about six hours in an
eight-hour workday. Dr. Einhorn determined she could never climb
ladders or scaffolds but could frequently stoop and occasionally
climb ramps or stairs, balance, crouch or crawl. He determined
she should avoid all exposure to hazardous machinery or heights.
Dr. Einhorn concluded that Plaintiff could "perform personal
care, prepare meals, perform light household chores, shop in
stores and ambulate using a walker despite her impairments."
Dkt. No. 12-3 at 12.

### B. Dr. William Alexander

On November 26, 2014, Dr. William Alexander found
there was insufficient evidence to complete a mental
residual functional capacity assessment of the Plaintiff.
Dr. Alexander determined Plaintiff to have several severe
impairments, including major motor seizures, affective
disorders, anxiety, organic mental disorder, and alcohol
abuse disorder.

**C. Dr. Mark Sokol**

Dr. Mark Sokol was referred by the Disability
Determination Services to perform a consultative
examination of Plaintiff on November 23, 2014.

Dr. Sokol determined Plaintiff's demeanor to be
"cooperative" and responsive, and her motor behavior to be
normal. Dkt. No. 12-7 at 125. He reported her "[t]hought
processes are extremely tangential. Her speech was fluent
and rapid." Id. He further determined she was depressed and
anxious, and her attention and concentration were impaired.
Her ability to recall recent, immediate, and past events
was impaired. When asked, Plaintiff could recall "six
digits forwards and two backwards. She spell[ed] 'world'
backwards correctly." Id. Dr. Sokol noted:

> She was administered a Folstein Mini-Mental Status
> examination on which she score[d] 21 of 30 possible
> points. She did not know what county we were in. She
> lost three points on Serial Sevens. She recalls one of
> three words after a five-minute delay. She is not able

> to correctly repeat, "No ifs, ands, or buts." When asked
> to take a paper with her right hand, she reached out
> with both hands and took it simultaneously with both.
> Her design copy was incorrect.

Id. Dr. Sokol assessed the Plaintiff's intellectual functioning to be in the average range but noted this was based on clinical impressions rather than formal intelligence testing. Dr. Sokol also noted that Plaintiff's "insights into her own dynamics are poor. Her judgment is fair." Id.

Dr. Sokol concluded Plaintiff "could not function independently" in part because of her memory impairment. Id. at 126. He recommended further intelligence and memory testing. Dr. Sokol further concluded that Plaintiff would "require an adaptive and supportive work environment," that her social skills "would impair her ability to work with co-workers, supervisors, and the general public," and she could not "learn [with] ordinary training." Id. Finally, he determined she "seems to do well with crystallized learning but learning new tasks would be difficult to impossible, I suspect." Id.

Dr. Sokol diagnosed Plaintiff with mild to moderate major depressive disorder without psychotic symptoms, generalized anxiety disorder, cognitive disorder not otherwise specified (NOS), and amnestic disorder NOS. Dr. Sokol determined Plaintiff's global assessment functioning (GAF) to be 50. A GAF

score of 50 indicates a serious impairment in occupational functioning.

### D. Opinion of Augusta Rosenthal, LCSW

On April 15, 2016, Augusta Rosenthal, a licensed clinical social worker treating Plaintiff with weekly counseling, completed a mental residual functioning capacity questionnaire. Rosenthal concluded Plaintiff would be unable to meet competitive standards in maintaining attention for two hours, working in coordination with others without being unduly distracted, performing at a consistent pace without an unreasonable number and length of rest periods, getting along with co-workers without unduly distracting them or exhibiting behavioral extremes, or traveling in unfamiliar places.

Ms. Rosenthal also concluded that Plaintiff would be "seriously limited, but not precluded" from remembering work-like procedures, understanding and remembering very short and simple instructions, completing a normal workday and workweek without interruptions from psychologically based symptoms, dealing with normal work stress, taking appropriate precautions from hazards, or using public transportation. Dkt. No. 12-7 at 131-32.

## PROCEDURAL HISTORY

### I.   Application

On July 21, 2014, Plaintiff filed an application for
disability insurance benefits based on several medical
conditions including depression, anxiety, bipolar disorder,
chronic neck pain, a heart attack, skin cancer, and "seizures:
grand mal epilepsy, memory loss, brain damage." Dkt. No. 12-2 at
97-98. Plaintiff's alleged onset date was January 1, 2014. Due
to her prior work history, Plaintiff was eligible to receive
disability benefits for a disability established on or before
June 30, 2014. See Dkt. 12-9 at 14; see also 42 U.S.C. §§
416(i), 423(c).

On November 26, 2014, Plaintiff's application for Social
Security disability insurance was denied because Plaintiff did
not show she was disabled before the date she was last insured,
or covered, for the benefits. On April 3, 2015, Plaintiff's
claim was also denied upon reconsideration.

### II.  2016 Hearing and Decision

Plaintiff received a hearing before an Administrative Law
Judge ("ALJ") in May 2016. The ALJ denied Plaintiff's
application in June 2016, concluding that Plaintiff's last date
of eligibility for disability benefits was June 30, 2014 and
that Plaintiff was not disabled before that date.

The ALJ determined Plaintiff had several severe impairments between January 1, 2014 and June 30, 2014, namely seizure disorder, depression, anxiety, cognitive disorder, and alcohol abuse. However, the ALJ found the impairments did not equal the severity of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1. The ALJ also found Plaintiff could perform "less than the full range of light work," but that jobs existed in significant numbers in the national economy that the claimant could have performed. Dkt. No. 12-2 at 26, 35. On June 5, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's determination.

Plaintiff then filed suit in this Court requesting reversal and remand of the ALJ's decision. The Commission assented with instructions for the ALJ to reevaluate the medical opinion evidence. The District Court remanded the case in March 2018.

## III. **2018 Hearing**

Plaintiff received a second hearing before an ALJ in August 2018. At the hearing, Plaintiff acknowledged that she could read and write, count change, do simple mathematics, read the news, watch television, and make decisions. Plaintiff also testified that she cooks big meals, vacuums, and accompanies her partner in grocery

shopping. Plaintiff testified that she could sit or stand but had fidgeting and balance problems.

Plaintiff testified that the conditions that prevented her from working in 2014 included seizures, memory impairments, and depression. Plaintiff specified that she could not learn how to use a register when she tried to work as a waitress. She stated she could not work in club promotions because she could not travel and "could probably never work in an office." Dkt. No. 12-9 at 68. Plaintiff also stated that she would soon begin making calls for a political campaign.

Plaintiff also testified that she "walk[s] around in a daze" and "is very energetic" but has "problems sitting." Id. at 54-55. She stated she could not watch a movie from beginning to end and has problems understanding instructions and getting along with others. When she reads the news, she has to read materials several times to understand them. She also testified she cannot walk straight because of balance problems. If she does go grocery shopping alone, Plaintiff will often forget her bags inside the store. Plaintiff does not take herself to medical appointments.

### A. Vocational Expert Testimony

Vocational expert Albert Sabella testified, in response to a hypothetical posed by the ALJ, that an individual with Plaintiff's mental and physical limitations could not perform

Plaintiff's past relevant work. Sabella stated that Plaintiff's standing or walking limitation to four out of eight hours in a day did not "quite meet the full definition of light work." Id. at 73. As a result, he determined that Plaintiff could perform "selective light work." Id.

Sabella stated that because Plaintiff could stand or walk only four out of eight hours a day, the available national and regional jobs available should be cut in half. Sabella then testified that Plaintiff could work "assembling electrical accessories," as a "sealing machine operator," or "inspecting plastic products." Id. Sabella explained that his job estimates primarily came from the Standard Occupational Classification System, supplemented with other sources such as population surveys from the Department of Labor. He further testified on cross-examination that his reduction based on the standing and walking limitation was based on his "experience . . . in my own private practice and hearing testimony here at numerous Social Security disability cases." Id. at 79.

**B. Meuse Affidavit**

Following the August 2018 hearing, Plaintiff submitted an affidavit from vocational expert David Meuse. Meuse challenged Sabella's testimony on three grounds. First,

14

Meuse objected to Sabella's failure to properly account for
Plaintiff's limitation on standing or walking no more than
four hours in a day. Second, Meuse opined that the job numbers
offered by Sabella were unsupportable. Third, Meuse stated that
the electrical assembler and inspector jobs identified by
Sabella now require increased skill levels. Consequently, Meuse
opined that a worker limited to simple tasks would not be able
to perform those jobs.

### IV.  ALJ Determination

On October 30, 2018, the ALJ denied Plaintiff's claim. The
ALJ first determined Plaintiff's date last insured to be June
30, 2014. The ALJ then performed the five-step analysis required
for Social Security determinations.

At step one, the ALJ found the claimant did not engage in
substantial gainful activity between her onset date, January 1,
2014, through her date last insured. At step two, the ALJ found
Plaintiff to have the following severe impairments: "seizure
disorder, depression, anxiety, a mild cognitive disorder and
alcohol abuse." Dkt. No. 12-9 at 16.

At step three, the ALJ determined these impairments did not
equal the severity of an impairment listed in 20 C.F.R Part 404,
Subpart P, Appendix 1. The ALJ assessed Plaintiff's physical and
mental residual functional capacity, including the following:

> The claimant could understand, remember and carry out
> simple instructions. She could perform simple, routine
> and repetitive tasks over an eight-hour workday within
> a normal break schedule. The claimant could not perform
> time-pressured tasks, such that the individual was
> limited to goal-oriented work, not time sensitive strict
> production quotas. She could make simple work-related
> decisions. The claimant could occasionally interact with
> supervisors and co-workers, in that she could work in
> the presence of co-workers and engage in appropriate
> occasional social interactions, but could not work in
> the context of a work team where work-related
> interactions with co-workers and supervisors is constant
> and/or physically close. She could interact with the
> public on an occasional basis, provided interaction
> requires no more than exchange of non-personal work-
> related information or handoff of products or materials.
> The claimant could tolerate simple routine changes in a
> work setting.

Id. at 19. The ALJ determined that during the relevant period,

Plaintiff's seizure disorder was well controlled, and her

cognitive and memory deficits were "not disabling" and were "in

the setting of alcohol abuse." Id. at 21. The ALJ summarized

Plaintiff's medical visits in the relevant period.

The ALJ afforded "great weight" to the medical

consultants' opinions regarding Plaintiff's physical

limitations, but "little weight" to opinions regarding

Plaintiff's mental limitations. Id. at 22-23.

The ALJ gave only "partial weight" to Dr. Sokol's

opinion, dated November 2014, because (1) Dr. Sokol's

opinion that the claimant would have difficulty learning

new tasks was undermined by Plaintiff's hearing testimony

regarding her ability to cook, drive, handle finances, and

use the internet, (2) several of Dr. Sokol's conclusions were
vague, (3) the opinion was conducted several months after the
relevant time period, and (4) Dr. Sokol's global assessment of
functioning of 50 was inconsistent with medical records from the
relevant period which indicated that Plaintiff's symptoms
improved with treatment and that Plaintiff had normal mental
status examinations. Id.

Finally, the ALJ gave little weight to the opinion of
Augusta Rosenthal because she began treating Plaintiff in
February 2016 and because a licensed social worker is not a
medical source.

The ALJ then proceeded to step four and determined
Plaintiff could not perform past relevant work. At step five,
the ALJ determined that jobs existed in the national economy in
significant numbers that Plaintiff could have performed.

The ALJ also determined that the Meuse affidavit submitted
by the Plaintiff after the hearing was not persuasive. The ALJ
explained that the "claimant's vocational expert was retained
for the purpose of supporting a claim for disability and he was
not present at hearing and subject to examination." Id. at 14.
The ALJ concluded that Sabella was "certified as an expert by
the SSA and relie[d] on his experience and skill to provide job
numbers based on sources he ha[d] determined to be reliable."
Id.

The Appeals Counsel declined to reconsider the case.

## LEGAL STANDARDS

## I.   Statutory and Regulatory Framework

Under the Social Security Act, a claimant seeking benefits generally must demonstrate that she is "insured," or covered under the Act based on her prior work history. 42 U.S.C. § 423(a)(1)(A); id. § 423(c)(1). The claimant must then prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than twelve months." Id. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, a person must have a severe impairment that renders her unable to do her past relevant work "or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a).

ALJs employ a five-step sequential evaluation process to assess a claim for disability benefits. See id. §§ 404.1520(a)(4)(i)-(v), 404.1594. The evaluation may be concluded at any step in the process if the ALJ determines that the claimant is or is not disabled. Id. § 404.1520(a)(4).

> The steps are: (1) if the applicant is engaged in substantial gainful work activity, the application is denied; (2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; (3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is

18

granted; (4) if the applicant's [RFC] is such that he
or she can still perform past relevant work, then the
application is denied; (5) if the applicant, given his
or her [RFC], education, work experience, and age, is
unable to do any other work, the application is
granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

## II.   **Standard of Review**

Under the Social Security Act, this Court has the "power to

enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the

cause for a rehearing." Id. at 8 (quoting 42 U.S.C. § 405(g)).

This Court must determine whether the agency's decision "is

supported by substantial evidence and whether the correct legal

standard was used." Id. at 9.

For findings of fact, the substantial evidence standard is

"not high" and requires only "such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"[T]hough certainly 'more than a scintilla' of evidence is

required to meet the benchmark, a preponderance of evidence is

not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018)

(quoting Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d

51, 56 (1st Cir. 2003)). "[I]t is the province of the ALJ, not

the Court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence." Johnson v. Colvin, 204 F. Supp. 3d 396, 407 (D. Mass. 2016).

The Court may set aside a decision where the ALJ's factual findings were "derived by ignoring evidence. . . or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The Court examines the record in its entirety to determine the weight and "substantiality" of the evidence. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998).

The Court reviews the ALJ's conclusions of law de novo. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)). Where application of the correct legal standard could support a different conclusion, the agency's decision must be remanded. See Ward, 211 F.3d at 656 (citing Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)).

## ANALYSIS

Plaintiff argues this Court should reverse the Commissioner's denial of disability benefits because the ALJ erred in two ways: (1) the ALJ based his determination of Plaintiff's mental residual functional capacity on his own interpretation of medical information, and (2) the ALJ failed to consider the vocational expert affidavit submitted by the Plaintiff post-hearing. The Court addresses each argument in turn.

## I.    Mental RFC Determination

Plaintiff argues the ALJ improperly relied on his own lay interpretation of the medical evidence because the ALJ gave only partial weight to the opinion of Dr. Sokol and disregarded the opinion of Augusta Rosenthal. Plaintiff argues the ALJ erred by rejecting the parts of Dr. Sokol's opinion that described Plaintiff's limitations and by relying on no other medical opinion. Plaintiff also asserts that other evidence on the record supports the Sokol opinion. Defendant responds that the ALJ properly assessed the medical record in the relevant period which showed the Plaintiff improved with medication.

Where no functional assessment of Plaintiff's capacity exists in the record, the court should perform a "qualitative assessment of the medical evidence that was before the ALJ." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d

15, 17 (1st Cir. 1996). The court may uphold the ALJ's finding
where the "evidence suggests a relatively mild
physical impairment posing, to the layperson's eye, no
significant exertional restriction." Id. at 17-18 (remanding for
additional evidence of functional capacity where treatment
records showed worsened condition and abnormal test results);
Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446-47
(1st Cir. 1991) (affirming despite lack of functional assessment
where treatment records showed neurological condition "within
normal limits"); Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D.
Mass. 2004) (affirming where ALJ afforded medical opinion little
weight given physical therapy notes citing weight loss and
inferences drawn from daily activities).

There is no functional assessment of Plaintiff's mental
capacities between January and June 2014 on the record. The only
evidence predating June 2014 are records from Plaintiff's
primary care physician noting Plaintiff's symptoms improved with
medication. The state agency's consulting physician had
insufficient records to determine a mental residual functional
capacity assessment. Plaintiff's EEG from July 2014 was normal,
and brain scans in August 2014 showed no recent changes. The
only medical opinion is that of Dr. Sokol, who performed a one-
time examination, in November 2014. Dr. Sokol noted severe
limitations based on the interview but did not assess

Plaintiff's medical records. The Rosenthal opinion was not completed until April 15, 2016 and was based on impressions since February of 2016. Dr. Dorn performed formal psychological testing showing a mild cognitive disorder, but not until 2018.

To support her argument, Plaintiff cites Oliveras v. Comm'r of Soc. Sec., 354 F. Supp. 3d 84, 91 (D. Mass. 2019) (remanding where the RFC assessment was "not tethered to any medical opinions in the record that the ALJ did not reject"). In Oliveras, however, the record contained at least four medical opinions and the ALJ rejected each in favor of the ALJ's own interpretation of the record. See id. at 91-92. Here, the ALJ permissibly gave partial weight to Dr. Sokol's evaluation in light of Plaintiff's treatment records from her medical provider during the relevant time period. Accordingly, the ALJ's determination is supported by substantial evidence on the record.

Separately, Plaintiff argues the ALJ should have credited the opinion of Augusta Rosenthal, a licensed clinical social worker, dated April 15, 2016. The opinions of therapists are "other medical sources," for which the administrative law judge has the discretion to assign weight. 20 CFR § 404.1513(d); Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012). The ALJ may not ignore the other medical source or fail to adequately

explain the weight given to the evidence. Taylor, 899 F. Supp. 2d at 88.

The ALJ did not credit this opinion because it was a non-medical opinion and Rosenthal treated Plaintiff beginning in February 2016, nearly two years after the relevant time period. Even if the ALJ may not discredit an opinion solely because the source is non-medical, here the ALJ permissibly concluded the opinion offered little probative value because of its timing.

## II.  **Vocational Expert Testimony**

A reviewing court must determine whether vocational expert (VE) testimony is supported by substantial evidence. Biestek, 139 S. Ct. at 1155-56. Testimony that is "feeble, or contradicted," may not "clear the substantial-evidence bar." Id.

Here, Plaintiff argues that the ALJ committed reversible error by failing to consider challenges to the VE testimony raised by the Meuse affidavit. The Court agrees and finds that remand is warranted because the ALJ's Step 5 analysis failed to consider evidence that the VE testimony was either flawed or incomplete for the reasons set forth in the Meuse affidavit. Cf. Purdy, 887 F.3d at 16 (affirming methodology of vocational expert where no contradictory evidence appeared on the record).

First, the VE failed to properly account for the Plaintiff's inability to stand or walk for more than four hours in a day. The VE testified that a person with such limitations

could perform the jobs of electrical assembler, sealing machine operator, or inspector. However, each of those positions is classified as "light work" which, under SSA regulations, "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." See Dkt. No. 12-13 at 23-24 (citing Social Security Ruling 83-10).

Instead of identifying jobs within the DOT suited to Plaintiff's four-hour limitation on standing or walking, the VE simply reduced the number of identified light work jobs by half. The VE provided no substantive explanation for this methodology, but rather stated the alteration was based on his "experience, working in [his] own private practice and hearing testimony" in disability cases. Dkt. No. 12-9 at 79. This ipse dixit without any apparent methodology does not constitute substantial evidence. The ALJ's opinion likewise did not identify a "reasonable explanation for [the] conflict[] between occupational evidence provided by [the VE] and information in the [DOT]." See Social Security Ruling 00-4p, 65 Fed. Reg. 75759-01 (2000).

Plaintiff argues that the VE must have reclassified the exertional levels of the DOT listings or assumed that employer accommodations would be available. Neither approach is permissible. See id. (providing that "the regulatory definitions of exertional level are controlling," such that the ALJ may not

rely on a VE's testimony that an occupation falls under a different exertional level than its DOT listing); Cleveland v. Policy Mgm't Sys. Corp., 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account."). The record provides no basis for the Court to assess this argument or to otherwise assess how the VE reached the estimates.

Without the benefit of the VE or the ALJ's reasoning, the Court cannot conclude that the Administration met its burden during the Step 5 analysis. See Gross v. Colvin, 213 F. Supp. 3d 229, 235-36 (D. Mass. 2016) (remanding due to "lack of clarity as to [VE's] methodology" where VE "stated that his testimony was based on his education, experience, and training [but] did not provide a specific calculus for how he estimated the jobs available when considering [the plaintiff's] specific exertional limits"); see also Baillargeon v. Berryhill, 359 F. Supp. 3d 172, 184 (D.N.H. 2019) ("[The] Commissioner has not produced adequate testimony from a VE that explains how any of the three light-duty jobs she identified can be performed by a person who cannot walk/stand for more than four hours in an eight-hour day . . . Accordingly, a remand is required."). Cf. Vasquez v. Sec'y of Health and Human Servs., 683 F.2d 1, 5 (1st Cir. 1982) (remanding "because of the lack of specific findings and the

genuine possibility that the ALJ adopted a position contrary to that of" agency regulations); Lefebvre v. Saul, 411 F. Supp. 3d 173, 181 (D. Mass. 2019) (remanding due to "unresolved discrepancies between [the VE's] testimony and the DOT," and noting that "the Commission bears the burden at Step 5").

The Meuse affidavit also raised legitimate challenges to the VE's job estimates. At the hearing, the VE testified that his estimates were "congruent with today's job market" and "essentially" had not changed since they were described in the DOT, based on "labor market surveys" he had completed. Dkt. No. 12-9 at 76-77. In contrast, Meuse opined that the jobs identified by the VE either no longer exist in significant numbers or have evolved to require increased skill. For example, the DOT's description of electrical assemblers was last updated in 1988, more than 30 years ago. Dkt. No. 12-13 at 25. Furthermore, Meuse presented evidence that electrical assembler and inspector positions require increased skill levels as compared to when the DOT listings were last updated. Consequently, Meuse opined that a worker limited to simple tasks would not be able to perform those jobs today. Social Security regulations recognize that a "gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 404.1565(a). "Courts have repeatedly

expressed concern about a hearing officer's reliance on obviously outdated [DOT] occupations at step five." Sinclair v. Berryhill, 266 F. Supp. 3d 545, 558 (D. Mass. 2017) (remanding where VE's testimony "overlook[ed] the reality that jobs have changed over the past forty years").

The ALJ did not address these serious challenges to the VE's testimony. Rather, the ALJ simply stated that the Meuse affidavit was not persuasive, noting Meuse was "retained for the purpose of supporting" the Plaintiff's claim. Dkt. No. 12-9 at 14. The fact that Meuse was retained by the Plaintiff does not provide adequate grounds for rejecting the arguments raised in the affidavit. Social Security regulations explicitly recognize a party's right to submit rebuttal evidence after a hearing. See Social Security Regulation 96-9p n.8, 1996 WL 374185 ("Whenever a [vocational expert] is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision."); Oliveras, 354 F. Supp. 3d at 95 ("[A]n ALJ may not simply ignore evidence because it is favorable to a claimant."). Cf. Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) (per curiam) ("Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them."). Here, the ALJ's opinion did not include any explanation that "a reasonable mind might accept as adequate

to support" rejection of the Meuse affidavit. See Biestek, 139

S. Ct. at 1155 (citation omitted). Accordingly, remand is

warranted.

### ORDER

For the reasons above, the Court **DENIES** the Government's

motion to affirm the Commissioner's decision (Dkt. No. 19) and

**ALLOWS** Plaintiff's motion to remand (Dkt. No. 14).


SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge